JOHN ROBERTSON *vs.* ANN D. MILLER AND OTHERS.

A mill owner petitioned under the flowage act for the right to raise his dam and flow a mill above him but below a reservoir owned by him. For more than fifteen years before the erection of the upper mill the petitioner and his grantors had controlled the flow of water from the reservoir to his mill. The respondents, as heirs of the petitioner's grantor, owned the land between the reservoir and the mill on both sides of the stream, and had recently built a dam and mill. The flowage act provides that no dam shall be erected to the injury of "any mill lawfully existing." There was a fall of fourteen feet on the respondents' land, but their dam set the water back upon the reservoir eighteen inches. The detention of the water by their dam was no serious injury to the petitioner's mill. The petitioner claimed the right to flow the land under his deed, and also that the respondent's mill was not a lawfully existing one. Held—1. That if the petitioner's deed gave him the right there was no need of the aid of the court, and the petition should be dismissed. 2 That although the respondents had no right to set the water back upon the reservoir and were liable therefor, yet that the mill remained a lawfully existing one for whatever height of dam it was entitled to. 3. That a detention of the water that worked no serious injury to the petitioner was not a reason for regarding the mill as not a lawfully existing one.

PETITION under the flowage act; brought to the Superior Court in New London County, and reserved, upon the report of the committee, for the advice of this court. The facts, which are complicated and cannot be easily understood without a plan of the premises, are sufficiently stated in the opinion of the court to make clear the points of law decided.

*Lippitt* and *Hovey*, for the petitioner.

*Halsey* and *Pratt*, for the respondents.

CARPENTER, J. This is a petition under the flowage act. The petitioner and the respondents hold respectively under John S. Miller, who, in 1795, owned the mill and reservoir now owned by the petitioner, and the land sought to be flowed, now owned by the respondents, and which is situated between the petitioner's mill and reservoir; and also a tract of ten acres on Alewife brook, opposite the petitioner's mill, sold in 1795 to Alexander Rogers. The deed to Rogers contained the following clause:—"Excepting and reserving to myself

and my heirs the whole of said Alewife brook, adjoining said land, with the clear, full and absolute right of such part or parts of said land as may be found necessary by myself or my heirs for the purpose of building, erecting and maintaining a mill or mills, dam or dams, on and across said brook, with the full right of passing at all times to and from said mill, mills, dam or dams, through any or such part or parts of the above described land, with team or teams, horse or horses, and footmen, as may be necessary either for the purposes of transporting grain or any other materials, either for the building or repairing of said mill or mills, dam or dams, or for the purposes of such manufactures as may be carried on or made in such mill or mills. Also excepting and reserving such stone or stones and gravel as may be found on said land, and may be wanted or found necessary for the purposes of building said mill or mills, dam or dams."

In 1815, Miller sold to John Scolfield the mill and reservoir now owned by the petitioner and such rights as Miller had under the clause in the Rogers deed quoted above. All the premises, appurtenances and privileges owned by Scolfield are now owned by the petitioners. It is found that the petitioner had acquired by deed the right to flow all the lands covered by the reservoir pond, and was the owner of the reservoir dam and of the land on which it stands; and that he, and the preceding owners of his mill, for more than fifteen years before the bringing of the petition, had controlled the use of the water of the reservoir, and had used the same by opening the outlet gate in the morning, letting the water run to the petitioner's mill during the day, and closing the outlet at night, sometimes also using it for the same purpose during the night.

The respondents derived their title from Miller by will or descent. Their land, which lies on both sides of Alewife brook, has a fall of fourteen feet. The respondent Woodworth, in 1871, took a lease of said premises from the other respondents for a term of ten years, at a yearly rent of one hundred dollars, and erected a mill thereon. Before putting it in operation this petition was brought. At that

time the petitioner, with the consent of one of the respondents, and without the consent of the others, was raising the water in his pond, by means of flash-boards, twenty-two and a half inches higher than the cap-log of his dam. Woodworth's wheel is on a level with the cap-log. His dam flows the water upon the reservoir dam eighteen inches, and the operation of his mill causes some slight delay in the passage of the water from the reservoir to the petitioner's mill, but causes no perceptible loss of water.

Upon these facts the petitioner claims that he has a right to flow the respondents' land as prayed for, first, by virtue of the deed from Miller to Scolfield; and secondly, by virtue of the flowage act, for the reason that Woodworth's mill is not a lawfully existing mill.

1. If the petitioner is correct in his first claim he has the right without the aid of the flowage act, and the petition should be dismissed. But he is not correct. There is nothing in that deed which gave to Scolfield the right to flow the land now owned by the respondents. No such right is appurtenant to the land granted. Flowage appurtenances must be limited to rights existing and exercised by Miller under the then existing state of things,—the dam as it then was. No such right was conveyed in express terms, nor as a part of the reservation in the deed to Rogers. That reservation can only affect the land granted by that deed, the ten acres on the opposite side of the brook, and which forms no part of the land now sought to be flowed.

2. It is next claimed that the flowage act applies, because the respondents' mill is not a lawfully existing mill. This claim rests upon two grounds. The first is that the rights claimed and exercised under the lease of stopping and ponding the water, are in violation of the covenants in the deed from Miller to Scolfield, and of his mill rights generally. The ponding of the water occasions only a slight delay. It is expressly found that there is no perceptible loss of water, and it does not appear that the delay works any perceptible injury to the petitioner. We are not satisfied from the report of the committee that the use of the water by the respondents deprives

the petitioner in any degree of the practical and beneficial use of the water from the reservoir. In this case the respondents can exercise their riparian rights and utilize the water without substantial or perceptible injury to the proprietor below. If so, there is no justice in depriving them of a valuable privilege simply for the reason that its use occasions a slight detention of the water.

The second ground is, that the respondents' dam wrongfully causes the water to flow back upon the reservoir dam and property of the petitioner. It is found by the committee that the dam does set the water back upon the reservoir dam eighteen inches. For the purposes of this case, at least, the respondents are trespassers to that extent. But that does not destroy their privilege in respect to the remaining fall, twelve and a half feet. To that extent certainly their mill is a lawfully existing mill. The dam thereof may be too high. For the damage thereby caused the petitioner has his remedy by an action at law, and the respondents may be compelled to reduce their dam. The fact that their ditch and trough as now arranged, would not, in that event, conduct the water to their wheel, is of no importance; for the ditch and trough may be lowered as well as the dam. If no dam could be constructed without trespassing upon the rights of others, or, in other words, if there was no substantial fall in the brook upon the respondents' land, the case would present quite a different question. As it is, we think that the mill is not an unlawful mill within the meaning of the statute.

For these reasons we advise the Superior Court to render judgment for the respondents.

In this opinion the other judges concurred.